## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **ROBIN S. BRANDON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | **NO. 1:09-CV-1004-AJB** |
| *Commissioner of Social* | : | |
| *Security Administration*, | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Robin S. Brandon brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Social Security Supplemental Security Income ("SSI").[2]  For the reasons set forth below, the undersigned **AFFIRMS** the decision of the Commissioner.

---

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  [See Doc. 3; Dkt. Entry dated 4/15/2009]. Therefore, this Order constitutes a final Order of the Court.

[2]    Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income for the disabled.  Title XVI claims are not tied to the attainment of a particular period of insurance eligibility.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).

AO 72A
(Rev.8/8
2)

## I.   PROCEDURAL HISTORY

Plaintiff initially filed an application for SSI on August 19, 2004, alleging disability commencing on May 21, 1999.  [Record (hereinafter "R") 44].  The application was denied initially, [R39], and on reconsideration.  [R33].

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R33].  An evidentiary hearing was held on August 13, 2008, [R321-334], which resulted in a "Notice of Decision-Unfavorable," dated September 26, 2008, denying Plaintiff's claims on the grounds that she retained the Residual Functional Capacity ("RFC") to return to her past relevant work.  [R9-18].  Plaintiff requested review by the Appeals Council which, on February 5, 2009, denied Plaintiff's request, concluding that there was no basis under the regulations for granting the request for review, thus making the ALJ's decision the final decision of the Commissioner.  [R2-6].

Plaintiff, having exhausted all administrative remedies, filed this action on April 7, 2009.  [Doc. 2].  The Commissioner filed the transcript of the administrative proceedings on July 29, 2009.  [Doc. 7].  The matter is now before the undersigned upon the administrative record, the parties' pleadings, briefs and oral argument, and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

2

## II.    PLAINTIFF'S CONTENTIONS

As set forth in Plaintiff's brief, the issues to be decided are as follows:

1.    Whether the Defendant applied the proper legal standard to reach and support his decision.

2.    Whether the final decision of the Defendant is supported by substantial evidence.

3.    Whether there is substantial evidence to support the Plaintiff's application for disability.

[Doc. 10 at 1].

## III.    STATEMENT OF FACTS

### A.    *Factual Background*

Plaintiff was born on November 26, 1959, and was 48 years old at the time of the administrative evidentiary hearing.  [R97, 324].  Plaintiff is a high school graduate who completed one year of college.  [R95, 324].  Her past relevant work is as a cashier and secretary.  [R51, 92, 325, 330-331].  Plaintiff alleges disability based on breathing problems, an ulcer, and pain in her wrists, knees, and head.  [R44, 92].

### B.    *Medical Records*

The medical evidence is comprised of records from (1) Grady Health Systems ("Grady"), (2) the Kirkwood Center, (3) Dr. Frank Ferrell, (4) Dr. Robert Coyle, (5) Dr.

AO 72A
(Rev.8/8
2)

Sandra Jensen, (6) Dr. Stephen Hamby, (7) Dr. John Heard, and (8) Atlanta Health Evaluation Center.  [R100-319].

The record indicates Plaintiff sought treatment at Grady on September 30, 2003, for a variety of complaints, including chest pain, an upper respiratory infection, and carpal tunnel syndrome.[3] [R318-19].  Plaintiff apparently did not seek further treatment until April 14, 2004, when she sought refills of Nexium, which she had been without for a week.  [R130, 155].  Plaintiff exhibited signs of carpal tunnel syndrome when she returned on April 20, 2004, but she did not keep a follow-up appointment.  [R154].

Plaintiff returned to Grady on June 20 and July 27, 2004, for a rash and an infection under her nails.  [R152-53].  She also complained of abdominal pain, back pain, neck pain, and symptoms of carpal tunnel syndrome on July 27, 2004, but she did not show up for an appointment to evaluate her hands.  [R131, 150-51].  Plaintiff had numerous complaints when she returned on August 12, 2004. [R148-49]. An examiner noted Plaintiff had a depressed affect, but otherwise indicated an examination was

---

[3]     Carpal tunnel syndrome is pressure on the median nerve -- the nerve in the wrist that supplies feeling and movement to parts of the hand. It can lead to numbness, tingling, weakness, or muscle damage in the hand and fingers.  MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/000433.htm.

AO 72A
(Rev.8/8
2)

unremarkable, including full range of motion and negative Tinel's[4] and Phalen's[5] signs. [R149].   The examiner noted that Plaintiff's dyspepsia[6] was okay on Nexium, prescribed medication, and referred Plaintiff to other clinics for her nails, rash, joint pain, and alleged hand numbness.  [*Id*.].

Plaintiff received treatment for her nails and rash on August 20, 2004, and saw a physical therapist for her hands on August 23, 2004.  [R145-46].  However, Plaintiff did not keep an appointment with the physical therapist on September 8, 2004, and other than an echocardiogram[7] on August 31, 2004, she apparently did not receive further treatment until September 20, 2004, when she visited the rheumatology clinic.  [R142-44, 146].  An examiner indicated Plaintiff had signs of carpal tunnel

---

[4]     Tinel's sign is a test for carpal tunnel syndrome which involves tapping over the median nerve at the wrist which may cause pain to shoot from the wrist to the hand.  http://www.nlm.nih.gov/medlineplus/ency/article/000433.htm.

[5]     Phalen's test is another examination for the assessment of carpal tunnel syndrome which involves bending the wrist forward all the way for 60 seconds which will  usually  result  in  numbness,  tingling,  or  weakness. http://www.nlm.nih.gov/medlineplus/ency/article/000433.htm.

[6]     D y s p e p s i a   i s   i n d i g e s t i o n . http://www.nlm.nih.gov/medlineplus/indigestion.html.

[7]     An echocardiogram is a test that uses sound waves to create a moving picture of the heart. The picture is much more detailed than a plain x-ray image and i n v o l v e s   n o   r a d i a t i o n   e x p o s u r e . http://www.nlm.nih.gov/medlineplus/ency/article/003869.htm.

5

syndrome, mild crepitus in her knees, and trigger points, but apparently the examination

was otherwise unremarkable, including full range of motion.  [R142].  The examiner

assessed Plaintiff with polyarthralgia,[8] with no evidence of active synovitis[9]; likely

fibromyalgia,[10] for which he recommended sleep hygiene and exercise; hematuria,[11] for

which he recommended a diagnostic study; and carpal tunnel syndrome, for which he

referred Plaintiff to the hand clinic.  [*Id.*].

---

[8]  Polyarthralgia is pain in two or more joints. http://www.merriam-webster.com/medical/polyarthralgia (last visited September 13, 2010).

[9]  Synovitis is Inflammation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis.  Steadman's Medical Dictionary, http://www.drugs.com/dict/synovitis.html (last visited September 13, 2010).

[10]  Fibromyalgia is a disorder that causes muscle pain and fatigue (feeling tired).  People with fibromyalgia have "tender points" on the body.  Tender points are specific places on the neck, shoulders, back, hips, arms, and legs.  These points hurt when pressure is put on them. People with fibromyalgia may also have other symptoms, such as trouble sleeping, morning stiffness, headaches, painful menstrual periods, tingling or numbness in hands and feet, and problems with thinking and memory (sometimes called "fibro fog").  National Institute of Arthritis and Musculoskeletal and Skin Diseases, http://www.niams.nih.gov/Health_Info/Fibromyalgia/fibromyalgia_ff.asp (last visited September 13, 2010).

[11]  Hematuria is the presence of red blood cells (RBCs) in the urine.  National Kidney and Urologic Diseases Information Clearinghouse http://kidney.niddk.nih.gov/kudiseases/pubs/hematuria/ (last visited September 13, 2010).

AO 72A
(Rev.8/8
2)

On November 4, 2004, Plaintiff underwent a diagnostic study to evaluate her gastroesophageal reflux disease (GERD). [R138-41]. The study revealed a hiatal hernia but was otherwise normal, and the doctor advised Plaintiff to take Nexium and follow-up in three months. [R139]. Plaintiff did not seek further treatment until February 9, 2005, when she complained of vision problems. [R133-37]. Plaintiff sought follow-up treatment for her eye later in February 2005, when she also complained of gastrointestinal problems, headaches, and depression. [R125-29, 132]. An examiner noted Plaintiff was anxious and had some skin problems, but indicated the examination was otherwise unremarkable. [R129].

On February 15, 2005, Plaintiff was seen by Rhonda Ross, M.D., for a consultative physical examination. [R219-33]. Dr. Ross noted Plaintiff had a normal range of motion, no edema, intact pulses, normal reflexes, intact sensation, no muscle weakness, and negative straight leg raising. [R221-22, 223, 231-32]. Dr. Ross noted Plaintiff had mild crepitus in her knees, but no swelling or tenderness, normal gross and fine motor function in her feet and legs, and normal gait and station. [R222, 232-33]. X-rays of Plaintiff's right knee also were normal. [R225]. Dr. Ross noted Plaintiff had some mild swelling and tenderness in her right hand, but she had a normal ability to grip and grasp and normal gross and fine motion function in her hands and

7

arms.  [R222, 224, 232-33].  Although Plaintiff alleged depression, she reported she was not taking any medication for depression, admitted she performed a variety of activities of daily living, and denied other signs of mental problems.  [R220, 224]. Dr. Ross noted Plaintiff had a normal mental status examination, including intact memory and normal affect and mood.  [R222].  Dr. Ross noted it might be beneficial if Plaintiff not be employed in jobs requiring work in extreme cold, but she did not indicate Plaintiff had functional limitations.  [R224].

On March 29, 2005, John Heard, M.D., a State agency medical consultant, reviewed the record and assessed Plaintiff's RFC.  [R212-18].  Dr. Heard concluded that Plaintiff could perform a wide range of medium work, with gross manipulation and visual limitations.  [R213-16].

On March 28, 2005, Plaintiff was seen by Stephen Hamby, Ph.D., for a consultative psychological examination.  [R206-211].  Dr. Hamby noted Plaintiff's activities included paying bills, washing dishes, doing laundry, cooking regular full meals frequently, taking walks, driving daily, and socializing with family.  [R207-08]. Plaintiff reported no mental health treatment and indicated her medication helped her symptoms.  [R208, 210].  On examination, Dr. Hamby noted Plaintiff showed no evidence of depression or other significant mood disturbance, had a normal affect,

8

maintained good eye contact, and showed good attention and concentration. [R208]. Dr. Hamby also noted Plaintiff's speech was lucid and relevant with no special problems detected and her thought processes were within normal limits. [*Id*.]. He further noted her insight and judgment were average and her memory was fairly congruent with her age, intellectual range, and background. [*Id*.].

Dr. Hamby diagnosed Plaintiff with a mood disorder due to various physical problems with depressive features and borderline intellectual functioning. [R210]. He also noted Plaintiff's complaints of depressive symptoms, but he observed that her presentation was unremarkable and she did not appear particularly depressed or upset in any way. [R208-09, 210]. Dr. Hamby concluded that Plaintiff would be able to understand, remember, and carry out simple instructions; sustain attention to complete simple tasks; relate adequately to supervisors and coworkers; and would be at only mild risk of decompensation under stressful work conditions. [R210]. He also noted Plaintiff's mental condition would be expected to improve if she started mental health treatment, possibly including medication. [R211].

On April 21, 2005, Sandra Jensen, Ph.D., a State agency psychological consultant, reviewed the record regarding Plaintiff's mental condition. [R187-202]. Dr. Jensen found that Plaintiff had a severe mental impairment and indicated she could

perform the demands of unskilled work, although she might have difficulty maintaining attention for extended periods or completing a workday or workweek without interruptions from psychologically based symptoms and performing at a consistent pace. [R189].

Plaintiff complained of shoulder, wrist and hand pain in April 2005 but other than positive Tinel's signs, an examination did not reveal significant abnormalities. [R123-24]. Plaintiff had her Nexium prescription refilled in August 2005, but she apparently did not seek further treatment until January 10, 2006, when she complained of knee and foot pain. [R119-22]. An examiner noted some abnormalities in Plaintiff's right knee and indicated she had tendonitis.[12] [R120]. The examiner assessed Plaintiff with chest pain, dyspepsia, fibromyalgia, and depression, and noted the medications she took for each condition. [*Id*.]. The examiner prescribed medication and recommended exercise. [*Id*.].

On January 13, 2006, Robert Coyle, Ph.D., a State agency psychological consultant, reviewed the record regarding Plaintiff's mental condition. [R164-79].

---

[12]    Tendinitis is inflammation or irritation of a tendon — any one of the thick fibrous cords that attach muscles to bones. The condition causes pain and tenderness just outside a joint. http://www.mayoclinic.com/health/tendinitis/DS00153 (last visited September 13, 2010).

10

Dr. Jensen found that Plaintiff had a severe mental impairment and could understand and remember simple and semi-detailed instructions; could carry out simple and semi-detailed instructions, but at times she would have difficulty sustaining concentration, persistence, and pace or keeping up with a work schedule, although these were not substantial limitations; could relate adequately to coworkers and supervisors, but would at times have difficulty relating effectively to the public, although this was not a substantial limitation; and would at times have difficulty responding to fast-paced change or heavy production demands, although these were not substantial limitations. [R166].

On February 7, 2006, Frank Ferrell, M.D., a State agency medical consultant, reviewed the record and assessed Plaintiff's RFC.  [R156-63].  Dr. Ferrell found that Plaintiff had no exertional limitations, but was limited to occasional climbing, had limited far vision acuity, and needed to avoid concentrated exposure to hazards, fumes, odors, dusts, gases, and poor ventilation.  [R157-60].

Plaintiff sought a refill of Nexium on July 19, 2006, but the record indicates she did not seek further treatment until August 26, 2006, when she returned for a check-up of her knees, lower back, and hand pain.  [R112-15].  An examiner noted Plaintiff had a rash and a trigger finger and referred her to the hand clinic.  [R113].  The examiner

11

also noted Plaintiff was in good spirits with a smiling affect, and apparently no other noteworthy findings. [R112-13].  Plaintiff returned for a routine check-up on December 11, 2006.  [R108A-10].  An examination revealed crepitus in Plaintiff's knees and she was assessed as having degenerative joint disease.[13]  [R109].  The examiner did not indicate Plaintiff had other noteworthy problems, noting that she felt good and had a smiling affect.  [R108A-09].

On January 12, 2007, Anthony Nealy, M.D., reported that Plaintiff was receiving outpatient services at Kirkwood Center.  [R118].  He opined that Plaintiff had a "permanent psychiatric disability" and was "not able to be gainfully employed."  [*Id*.].

_____

[13]     Degenerative joint disease is also known as osteoarthritis.  Osteoarthritis is a joint disease that mostly affects cartilage.  Cartilage is the slippery tissue that covers the ends of bones in a joint.  Healthy cartilage allows bones to glide over each other.  It also helps absorb shock of movement.  In osteoarthritis, the top layer of cartilage breaks down and wears away.  This allows bones under the cartilage to rub together.  The rubbing causes pain, swelling, and loss of motion of the joint. Over time, the joint may lose its normal shape.  Also, bone spurs may grow on the edges of the joint.  Bits of bone or cartilage can break off and float inside the joint space, which causes more pain and damage.  People with osteoarthritis often have joint pain and reduced motion.  Unlike some other forms of arthritis, osteoarthritis affects only joints and not internal organs.  Osteoarthritis is the most common type of arthritis. National Institute of Arthritis and Musculoskeletal and Skin Diseases (NIAMS) Information Clearinghouse, http://www.niams.nih.gov/Health_Info/Osteoarthritis/osteoarthritis_ff.asp (last visited September 13, 2010).

12

Plaintiff did not seek further treatment until November 14, 2007, when she complained of back pain. [R107-08]. Plaintiff displayed a reduced range of motion in her back, but she had negative straight leg raising and apparently no other abnormal examination findings. [R108]. The examiner ordered x-rays and an MRI scan. [*Id*.]. Plaintiff returned to Grady on January 15, 2008, when she sought a refill of her Nexium. [R105-06]. Plaintiff returned for a routine check-up on March 3, 2008, when she complained of knee and back pain. [R103-04]. An examiner noted Plaintiff had negative straight leg raising and no crepitus in her knees, with no indication of noteworthy abnormalities. [R104]. The examiner prescribed medication and advised Plaintiff to return in six months. [*Id*.].

On June 28, 2008, Dr. Nealy provided an "assessment of mental capability" in which he opined that Plaintiff had a "fair" ability, defined as seriously limited, but not precluded, to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisor and maintain attention/concentration, and a "poor/none" ability to perform work-related mental activities due to a depressed mood. [R100-01].

13

AO 72A
(Rev.8/8
2)

D.      *Evidentiary Hearing Before The ALJ*

Plaintiff was 48 years old at the time of the hearing before the ALJ. [R324]. She completed one year of college education. [*Id*.]. Plaintiff testified that she last worked in 2000, but was fired due to health reasons. [R325]. She explained that she cannot work because she has "arthritis in my low back. I have two ulcers- I mean hernias. I have a bleeding ulcer, which I have had over 20 years. It caused me to have problems with my esophagus. I throw up blood." [*Id*.]. Additionally, Plaintiff testified that she has memory loss due to a head injury, stress related problems, carpal tunnel, and arthritis. [R325-26].

Plaintiff further testified that she can walk for "awhile" in a grocery store as long as she is leaning over a buggy. [R326]. She also sometimes loses her balance and falls down. [*Id*.]. In addition, Plaintiff testified that she has problems with her hands due to carpal tunnel. [R327]. She testified that her wrists "jams sometimes," she gets shooting pains, and that she drops things. [*Id*.]. Additionally, Plaintiff testified her acid reflux causes her to feel like she is having a heart attack and "causes me to be weak where I have to lay down and take my medicine." [R328.]. Plaintiff testified that because of her pain, she gets real tired and takes about three naps a day. [*Id*.].

14

Plaintiff testified that she takes medication for her depression, which helps because she "doesn't get upset as much.  I try to deal with it.  It helps."  [R329].  However, Plaintiff also testified that her depression medication cause her to not "think real good."  [*Id*.].  Plaintiff further testified that she does not believe she can work with her depression and stress.  [*Id*.].

The vocation expert ("VE") testified that Plaintiff's past relevant work was as a cashier/checker, which is light work, and as a secretary, which is sedentary work.  [R330-31].  The VE testified that a person has to work 40 hours a week on a regular and sustained basis and meet all the physical and mental requirements of the job in order to perform Plaintiff's past relevant work or any other work in the national economy.  [R331].  The VE also testified that if a person missed more than three days over the permissible amount allowed by the employer, then the individual would be released from employment.  [R331].

Plaintiff's attorney posed two hypothetical questions to the VE.  He asked whether a hypothetical person who had a fair ability to follow work rules, relate to others, deal with the public, use judgment, interact with supervisors, maintain attention and concentration, a poor to no ability to deal with work stress and be reliable could perform any of Plaintiff's past relevant work or any work in the national economy.

15

[R332].  The VE responded that such an individual could not work. [*Id*.].   Plaintiff's attorney then asked whether a hypothetical person with the Plaintiff's age, education, and work experience who had Plaintiff's physical problems, who would need three naps a day ranging from 30 minutes to a couple of hours, who could walk up to an hour, but would then need have to lay down, who has trouble standing up because she occasionally falls and hurts herself, has problems using her hands due to carpel tunnel syndrome and wrist cramping , and could occasionally lift ten to fifteen pounds would be able to perform Plaintiff's past relevant work or any work in the national economy. [R332-33].  The VE responded in the negative.  [R333].

## IV.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.   The claimant has not engaged in substantial gainful activity since August 19, 2004, the application. (20 C.F.R. § 416.920(b)).

2.   The claimant has the following severe impairments: gastroesophageal reflux disease (GERD) with peptic ulcer disease and hiatal hernia, a mood disorder, borderline intellectual functioning, carpal tunnel syndrome, and complaints of low back and knee pain.  (20 C.F.R. § 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

16

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR § 416.967(b) with limitations to no more than semi-skilled work.

5.      The claimant is capable of performing her past relevant work as a cashier.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 416.965).

6.      The claimant has not been under a disability, as defined by the Social Security Act, since August 19, 2004, (20 C.F.R. § 416.920(f)), the date the application was filed.

[R12-18].

The ALJ determined that Plaintiff was not disabled at any relevant time prior to his decision.  [R17].  In making this determination, the ALJ first summarized Plaintiff's medical records.  [R14-17].

The ALJ found that although Plaintiff complained of low back and knee pain, she had a full range of motion, negative straight leg raises, and no evidence of crepitus in either of her knees.  [R15-16].  Additionally, the ALJ noted that although Plaintiff suffered from depression and borderline intellectual functioning, she was only precluded from skilled work activity and had the ability to understand, remember, carry out simple instructions, sustain attention to perform tasks, and relate adequately to supervisors and co-workers.  [R16].

17

The ALJ discounted the opinion of Dr. Nealy who reported that Plaintiff had a psychiatric disability with only a fair ability to make occupational adjustments as conclusory and not supported by clinical findings.  [R16].  The ALJ then noted that he gave great weight to the opinion of Dr. Hamby due to the reported results of his mental status examination.  [*Id*.]

The ALJ discounted Plaintiff's subjective complaints of pain based on the medical evidence and because the evidence showed that medication was helping and that Plaintiff had never reported to her physician that her medication needed to be adjusted.  [R17].  The ALJ also noted that Plaintiff's daily activities were not unduly limited as she takes care of her household duties and son.  [*Id*.].

The ALJ observed that the VE found that an individual with Plaintiff's RFC could perform her past relevant work as a cashier.  [R17].  As a result, the ALJ found that Plaintiff was not disabled at any time after her alleged onset date because she could perform her past relevant work.  [*Id*.].

## V.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

18

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The claimant must prove at step one that she is not undertaking substantial gainful activity.  *See* 20 C.F.R. § 404.1520(b).  At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments which significantly limits her ability to

19

perform basic work-related activities.  *See* 20 C.F.R. § 404.1520(c).  At step three,

if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of

Part 404 (Listing of Impairments), the claimant will be considered disabled without

consideration of age, education and work experience.  *See* 20 C.F.R. § 404.1520(d).

At step four, if the claimant is unable to prove the existence of a listed impairment, she

must prove that the impairment prevents performance of past relevant work.

*See* 20 C.F.R. § 404.1520(e).  At step five, the regulations direct the Commissioner to

consider the claimant's residual functional capacity, age, education and past work

experience to determine whether the claimant can perform other work besides past

relevant work.  *See* 20 C.F.R. § 404.1520(f).  The Commissioner must produce

evidence that there is other work available in the national economy that the claimant

has the capacity to perform.  In order to be considered disabled, the claimant must

prove an inability to perform the jobs that the Commissioner lists.  *Doughty*, 245 F.3d

at 1278 n.2.

     If at any step in the sequence a claimant can be found disabled or not disabled,

the sequential evaluation ceases and further inquiry ends.  *See* 20 C.F.R. §§ 404.1520(a)

and 416.920(a).  Despite the shifting of burdens at step five, the overall burden rests

upon the claimant to prove that she is unable to engage in any substantial gainful

AO 72A
(Rev.8/8
2)

activity that exists in the national economy.  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## VI.   SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a

21

verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VII.   ANALYSIS OF CLAIMS OF ERROR

### A.    Combination of Impairments

Plaintiff argues that the ALJ did not consider the combined effects of her impairments. [Doc. 10 at 7]. Specifically, Plaintiff contends that the ALJ did not consider the effects of her degenerative joint disease, bi-lateral hip pain, polyarthralgia, fibromyalgia, and rheumatoid arthritis. [*Id*.]. Defendant responds that the ALJ properly considered the Plaintiff's impairments as a whole when evaluating her claim. [Doc. 12 at 13].

The ALJ must consider the combined effects of a claimant's impairments, severe and non-severe, before making a disability determination. *See* 20 C.F.R. §§ 404.1520, 404.1523; *Walker*, 826 F.2d at 1001. If the combined impact of impairments is

medically severe, the ALJ will consider the combined impact throughout the disability determination process.  20 C.F.R. § 404.1523; *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  The ALJ considers symptoms and signs including pain to determine whether a combination of impairments is severe and whether the combined impairments meet or equal the listings.  20 C.F.R. § 404.1529(d)(1), (3).  Also, the ALJ must " 'make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.' " *Walker*, 826 F.2d at 1001 (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).  However, the Eleventh Circuit has determined that the ALJ sufficiently makes findings regarding the effect of the combination of impairments by simply stating: "the medical evidence establishes that [the claimant] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the evidence showed that the ALJ considered the combined effect of the claimant's impairments when the ALJ found that although the claimant " '[had] severe residuals of an injury to the left heel and multiple surgeries on

AO 72A
(Rev.8/8
2)

that area,' he [did] not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.' ").

The Court concludes that the ALJ did not err in evaluating the combined effects of Plaintiff's impairments.  First, in rejecting Plaintiff's claim of disability, the ALJ specifically stated that Plaintiff did not have "an impairment or *combination of impairments* that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1." [R14] (emphasis added).  This is sufficient evidence to show that the ALJ considered all of Plaintiff's impairments.

Second, Plaintiff has failed to show that she had any limitations beyond those discussed by the ALJ that could be attributed to her degenerative joint disease, bi-lateral hip pain, polyarthralgia, fibromyalgia, and rheumatoid arthritis.  As pointed out by the Commissioner, the evidence shows that Plaintiff was only diagnosed with degenerative joint disease in her knee on one occasion in December 2006, [R109], but other records show that Plaintiff had normal x-ray findings, mild to no crepitus in her knees and a full range of motion.  [R104, 108, 120, 142, 222, 225, 231-232].  Moreover, the ALJ specifically noted Plaintiff's knee pain and her relatively normal findings.  [R14].  In her brief, Plaintiff only points to one instance where she complained of pain in her hips. [R107].  However, that examiner did not diagnose Plaintiff with anything besides low

24

back pain and there is no other evidence in the record to suggest that any examiner noted that Plaintiff suffered from hip pain or had any limitations related to any hip pain. Likewise, Plaintiff's polyarthralgia was only noted on two occasions, [R127, 142], and no limitations were prescribed to this condition.   Plaintiff was only assessed as suffering from fibromyalgia on three occasions.  [R120, 127, 142].   On one of the occasions the condition was only noted to be "likely" and again, no physician attributed any limitations to Plaintiff's diagnosis of fibromyalgia.  Finally, Dr. Ross observed that Plaintiff suffered from rheumatoid arthritis.  [R237-38].   However, Dr. Ross noted that this impairment could not be confirmed because there were no medical records available to confirm the diagnosis of rheumatoid arthritis and that Plaintiff had a full range of motion in all peripheral joints as well as her spine.  [R238, 247-249].  Because the ALJ specifically stated that he considered Plaintiff's impairments in combination, and because Plaintiff cannot show that her diagnoses of degenerative joint disease, bilateral hip pain, polyarthralgia, fibromyalgia, and rheumatoid arthritis caused any limitations beyond the ones noted by the ALJ, substantial evidence supports the ALJ's findings regarding Plaintiff's severe impairments.    Accordingly, the undersigned concludes that the ALJ properly considered Plaintiff's impairments in combination and Plaintiff's arguments for reversal on this ground are rejected.

AO 72A
(Rev.8/8
2)

B.      *Opinion of Dr. Anthony Nealy*

Plaintiff argues that the ALJ improperly discredited the opinion of her treating psychiatrist, Dr. Nealy, because he submitted the only psychiatric evidence in the record.  [Doc. 10 at 8].  Plaintiff also appears to argue that the ALJ improperly discredited Dr. Nealy, a psychiatrist, in favor of that of a non-treating psychologist. [*Id.*].  Defendant responds that substantial evidence supports the ALJ's decision to reject the opinion of Dr. Nealy because there is no evidence that he is Plaintiff's treating physician and there are no medical records to support his opinions.  [Doc. 12 at 18].  The Commissioner also argues that Plaintiff has provided no support for her assertion that the opinion of a psychologist is entitled to less weight than that of a psychiatrist.  [Doc. 12 at 20].

The ALJ must analyze all evidence and sufficiently explain the weight given to relevant exhibits.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary. " *Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis*, 125 F.3d at 1440); *see also* 20 C.F.R. § 404.1527(d)(2).  "Good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding;

26

or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). The ALJ must clearly articulate the reasons for giving less weight to the treating physician's opinion, *Lewis*, 125 F.3d at 1440, by "always giv[ing] good reasons in the notice of the . . . decision for the weight given to a treating source's medical opinion(s)." Social Security Ruling (SSR) 96-2p.[14] Thus, when the decision is not fully favorable to a claimant, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

---

[14]     The Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process. *See Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990); *see also Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1377 n.6 (N.D. Ga. 2006) (citing 20 C.F.R. § 402.35(b)(1)). Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *see also Salamalekis v. Commissioner of Social Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *State of Minn. v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

AO 72A
(Rev.8/8
2)

weight." *Id.* If the ALJ ignores or fails to properly refute the treating physician's opinion, the treating physician's opinion is deemed to be true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Court concludes that the ALJ did not err in discounting the opinion of Dr. Nealy. First, there is no evidence in the record to substantiate Plaintiff's claims that Dr. Nealy is her treating physician. Although Dr. Nealy states that Plaintiff was receiving outpatient services from the Kirkwood Center, [R118], the record does not contain any treatment notes from the Kirkwood Center or Dr. Nealy.

Second, even if Dr. Nealy was Plaintiff's treating psychiatrist, as noted by the ALJ, he failed to support his assessment with clinical findings. [R16]. Dr. Nealy opined that Plaintiff was "not able to be gainfully employed or participate in any type volunteer/work/training situation." [R118]. However, as stated above, Dr. Nealy's assessment is not supported by any clinical findings or treatment notes. Additionally, the assessment of Plaintiff's mental capacity form completed by Dr. Nealy is inconsistent with his opinion that Plaintiff is precluded from work. In his assessment of Plaintiff's mental capability, Dr. Nealy states that due to Plaintiff's depressed mood, she is "seriously limited, but not precluded" from engaging work related activities. [R100-01].

AO 72A
(Rev.8/8
2)

Third, Dr. Hamby's report also undermines Dr. Nealy's assessment of Plaintiff's mental condition.   In his report, Dr. Hamby noted that Plaintiff complained of depression, but that there was "[n]o evidence of depression or other significant mood disturbance."   [R208].   Dr. Hamby's assessment is consistent with other medical evidence in the record which shows that the only treatment Plaintiff received for depression was medication, and Plaintiff herself denied any mental problems.  [R120, 128-29, 148, 224].  Further. Dr. Hamby's assessment is supported by Dr. Ross who found that Plaintiff had a normal mental status examination.  [R222].

Finally, Plaintiff's contention that Dr. Nealy's opinion is entitled to more weight than Dr. Hamby's because he is a treating psychiatrist while Dr. Hamby is a psychologist is without merit.  As noted by Defendant, Plaintiff has provided no legal support beyond her own conclusory assertions to support this statement.  In addition, the Social Security regulations consider a psychologist an acceptable medical source. 20 C.F.R.§§ 404.1527(a)(2), 416.913(a)(2).  Moreover, although the issue has not been addressed by the Eleventh Circuit, other courts have determined that the opinion of a psychologist is not entitled to less weight than that of a psychiatrist.   *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also White v. Shalala*, 114 F.3d 1190 (6th Cir. 1997) (Table) (unpublished decision); *Ulmer v. Comm'r of Soc. Sec.*, No. 07-

29

CV-15446-DT, 2009 WL 514107, *9 (E.D. Mich Mar. 2, 2009); *Saad v. Comm'r of Soc. Sec.*, No. 07-15506, 2009 WL 454650, *7 (E.D. Mich. Feb. 24, 2009). *But see Fuller v. Massanari*, No. Civ.A. 00-0763-RV-M, 2001 WL 530425, *3 n.3 (S.D. Ala. May 11, 2001) (noting that "although [the Court] generally considers a psychiatrist to be a 'better informed' source of information regarding a patient's condition than a psychologist, a licensed or certified psychologist is considered to be an acceptable medical source under the social security regulations. . .  The Court acknowledges, however, that often-times, the psychologist works more closely with the patient than the psychiatrist.  So, it comes down to a case-by-case decision.").

Thus, the undersigned concludes that the ALJ sufficiently explained his reasons for discounting the opinion of Dr. Nealy that Plaintiff's depression prevented her from engaging in any work activity and Plaintiff's arguments for reversal on this ground are rejected.

C.      *Opinion of Dr. Ross*

Plaintiff argues that the ALJ improperly relies on the opinion of one-time examining physician Dr. Ross, who examined Plaintiff three years before the administrative hearing, in formulating the RFC assessment.  [Doc. 10 at 8-9].  The

30

Commissioner responds that both Dr. Hamby's and Dr. Ross's assessments do not indicate that Plaintiff's condition was as limiting as she claimed.  [Doc. 12 at 22-23].

The Court finds that substantial evidence supports the ALJ decision to rely on the opinion of Dr. Ross in formulating the RFC determination.  The opinion of a one-time examiner is not entitled to deference.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). Nonetheless, the ALJ must still consider such a opinion.  20 C.F.R. § 416.927(d). Additionally, well supported opinions are entitled to greater weight.   20 C.F.R. § 404.1527(d)(3).

Initially, as pointed out by Plaintiff, the Court notes that Dr. Ross's assessment of Plaintiff's condition was completed approximately three years prior to the hearing before the ALJ.  However, Plaintiff has not pointed to any evidence to show that Plaintiff's condition deteriorated during that time and the medical evidence shows that Plaintiff's condition remained essentially stable.  [*See* R103-110, 112-115, 119-124]. Thus, the ALJ did not err in relying on Dr. Ross's opinion even though it was three years old at the time of the hearing.

The ALJ determined that Plaintiff had the residual functional capacity to engage in light work.  The ALJ based this determination, in part, on Dr. Ross's physical

31

examination of Plaintiff. [R15]. In his opinion, the ALJ noted that Dr. Ross found that Plaintiff had a full range of motion throughout her cervical and lumbar spine, and in all extremities, and was able to squat completely, had good heel and toe walking, and had a steady gait. [*Id.*]. The ALJ also noted that Dr. Ross found that Plaintiff did not have any redness or enlargement of any joint and had a full grasp. [*Id.*]. The ALJ then properly noted that Dr. Ross's assessment was consistent with Plaintiff's records from Grady Hospital, where she was seen on several occasions for pain and noted to have no synovitis, negative straight leg raises, and no crepitus in either knee. [R15-16]. Moreover, additional medical records, which show that Plaintiff's had fine gross and motor movement in her hands and normal grip strength and pinching ability bilaterally, despite being treated for bilateral carpal tunnel syndrome, are also consistent with Dr. Ross's assessment of Plaintiff's condition. Thus, the ALJ properly relied on Dr. Ross's assessment of Plaintiff's abilities in formulating the RFC.

Accordingly, the undersigned concludes that the ALJ properly relied on Dr. Ross's assessment in formulating Plaintiff's RFC and Plaintiff's arguments for reversal on this ground are rejected.

32

D.      *Pain*

Plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence because she has a long history of seeking treatment for her complaints of pain and because she alleged that she suffered from pain at the administrative hearing.  [Doc. 10 at 9].  Plaintiff also appears to contend that the ALJ erred in assessing her credibility by taking into account her daily activities and assuming that her medication was controlling her complaints of pain.  [*Id*. at 9-10].  Defendant responds the ALJ properly considered Plaintiff's subjective complaints and properly found them to be less disabling than she claimed.  [Doc. 12 at 21].

In evaluating whether a Plaintiff is disabled based on a claimant's testimony regarding his pain or other subjective symptoms, the Eleventh Circuit's evaluates whether there is: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Wilson v. Barnhart*, 284 F.3d 1219,1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). The ALJ need not cite to the pain standard so long as "his

AO 72A
(Rev.8/8
2)

findings and discussion indicate that the standard was applied." *Wilson*, 284 F.3d at 1225-26.

The pain standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility." *Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1189 n.1 (N.D. Ala. 2006). Thus, "[i]f the pain standard is satisfied, the ALJ must consider the plaintiff's subjective complaints." *James v. Barnhart*, 261 F. Supp. 2d 1368, 1372 (S.D. Ala. 2003). When a claimant's subjective testimony is supported by medical evidence that satisfies the pain standard, he may be found disabled. *Holt*, 921 F.2d at 1223. If the ALJ determines, however, that claimant's testimony is not credible, "the ALJ must show that the claimant's complaints are inconsistent with his testimony and the medical record." *Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1368 (N.D. Ga. 2006). This credibility determination does not require the ALJ to cite to particular phrases or formulations, but it also cannot be a broad rejection so as to prevent the courts from determining whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005).

The Court concludes that the ALJ properly considered the pain standard. First, although the Plaintiff appears to contend that the ALJ completely disregarded her complaints of pain, the ALJ did specifically stated that "claimant experiences some

34

degree of pain and discomfort," but that she had not been restricted by any examining

physician from engaging in activities at the light level of exertion.  [R17].  Second,

although the ALJ does not cite or refer to the language of the three-part *Holt* test, his

findings and discussion indicate that the standard was applied.  The ALJ specifically

stated the following in his findings of fact:

> As explained previously, although the evidence shows that the claimant
> has a medically determinable impairment that could reasonably expected
> to produce the pain and other symptoms alleged, the evidence does not
> support the claimant's allegations of the intensity and persistence of such
> pain and other symptoms.  Specifically, the claimant testified she is unable
> to work due to back pain, hernias, bleeding ulcers, memory loss, stress
> related problems, carpal tunnel syndrome, arthritis in her knees and a burst
> blood vessel in one eye.  The claimant testified she cannot lift and carry
> more than ten to 10 [sic] pounds and must take naps throughout the day.
> As a result of the medication she takes, the claimant testified she has
> difficulty thinking.
>
> While it is recognized the claimant experiences some degree of pain and
> discomfort, she has not been restricted by an examining physician from
> engaging in activities at the light level of exertion.  Neither does the
> evidence show that medication has not helped with the claimant's
> complaints of pain.  If medication were not helping ease the claimant's
> pain, it is reasonable to assume she would report this information to her
> physician and her medication would be adjusted accordingly.   The
> claimant's daily activities are not unduly limited as she takes care of
> household duties and her son.  For these reasons, the claimant's subjective
> allegations are not considered fully credible.
>
> After considering the evidence of record, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be

35

> expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.

[R17].

Here, the ALJ essentially found that Plaintiff: (1) had an underlying medical condition and (2) the condition was such severity that it could reasonably be expected to give rise to the pain. *See Dyer*, 395 F.3d at 1210. As a result, the Court concludes that the ALJ implicitly considered and applied the pain standard. *See East v. Barnhart*, 197 Fed. Appx. 899, 905 (11th Cir. 2006) (holding the ALJ did not err in applying the pain standard because "[i]t is clear from the ALJ's opinion as a whole that, although [claimant] had impairments that could reasonably be expected to produce the type of pain and other symptoms [claimant] alleged, the ALJ did not believe [claimant's] testimony as to the severity of her pain and other symptoms"); *see also Wilson*, 284 F.3d at 1226 (finding that the ALJ properly applied the pain standard even though he did not "cite or refer to the language of the three-part test."). Thus, the Court finds no reversible error because it is clear that the ALJ properly applied the pain standard.

Finally, the Court finds that the ALJ did not err in making the credibility determination. The ALJ rejected Plaintiff's subjective complaints because he found

36

her complaints to not be credible based on the objective medical evidence.  This rejection of Plaintiff's credibility is entirely appropriate.  *See Fries v. Comm'r of Soc. Sec. Admin.*, 196 Fed. Appx. 827, 833 (11th Cir. 2006) ("Applying the pain standard, the ALJ properly considered [claimant's] assessment of her pain level and found that it was not credible to the degree alleged because the objective evidence . . . did not confirm the severity of [claimant's] alleged limitations."); *Humphries v. Barnhart*, 183 Fed. Appx. 887, 890 (11th Cir. 2006) ("The ALJ must make credibility determinations when a claimant attempts to prove disability through her own testimony of subjective symptoms such as pain using a three-part 'pain standard' test.").

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff's complaints of pain were not totally credible.  Here, as pointed out by Defendant,  the medical evidence shows that Plaintiff sought treatment for a variety of complaints, but examination revealed relatively benign findings.  [R104, 108-09, 113, 120, 124, 129-31, 133-34, 141-42, 145, 149].  Additionally, Dr. Ross also found a full range of motion and normal alignment of the spine and no evidence of any muscle weakness. [R22].

To the extent Plaintiff claims that the ALJ improperly noted her activities of daily living in discounting her subjective complaints, consideration of such evidence

AO 72A
(Rev.8/8
2)

is permissible.  20 C.F.R § 416.929(c)(3)(i); SSR 96-7p; *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding that ALJ's credibility determination should be upheld due to "inconsistencies between Moore's descriptions of her diverse daily activities and her claims of infirmity.  More specifically, the ALJ questioned Moore's contentions that she could not maintain consciousness or perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework."); *Johnson v. Barnhart*, 268 F. Supp. 2d 1317, 1328 (M.D. Fla. 2002) ("Here, the ALJ permissibly considered an aggregate of Plaintiff's activities, which combined with her report that she had been 'very active' prior to her CPK level tests, led him to conclude her activities were inconsistent with total disability. Accordingly, this reason was a specific and adequate reason for the ALJ to discredit Plaintiff's testimony and was supported by substantial evidence.").  In the present case, the ALJ properly noted that Plaintiff's ability to perform household duties and take care of her son showed that her complaints were not as limited as she claimed,  Moreover, the ALJ's assessment of Plaintiff's daily activities to discount her subjective complaints is bolstered by Plaintiff herself, who specifically advised Dr. Hamby that she performed a wide range of activities such as shopping, going to church, taking care of her dog, socializing with family, making dinner, cleaning, taking care of her bills and fiances,

AO 72A
(Rev.8/8
2)

washing dishes and doing laundry.  [R207-08].  Thus, the ALJ did not err in taking

Plaintiff's activities of daily living into account when evaluating her credibility.[15]

Accordingly, the ALJ properly evaluated Plaintiff's subjective complaints of pain

and Plaintiff's arguments for reversal on this ground are rejected.

## VIII. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is

**AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment for the Commissioner.

**IT IS SO ORDERED and DIRECTED**, this the 22nd day of September, 2010.

_____

**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

_____

[15]     Likewise, the Court notes that Plaintiff's arguments that the ALJ improperly used "pure conjecture" when he stated that"[i]f medication were not helping ease the claimant's pain, it is reasonable to assume she would report this information to her physician and her medication would be adjusted accordingly" are without merit. First, the ALJ did not rely on this reasoning in discounting Plaintiff's subjective complaints.  Instead, he merely pointed out that along with a lack of documented medical evidence substantiating her complaints of debilitating pain, Plaintiff never claimed that her medication was ineffective.  Such is a permissible observation. Second, Plaintiff has pointed to no evidence in the record to show that her medication was ineffective in treating her pain.

AO 72A
(Rev.8/8
2)